### BJORKQUIST *v.* CERTAIN STEEL RAIL CROP ENDS.

*(District Court, D. Maryland.  September 7, 1880.)*

1. CHARTER-PARTY — DEMURRAGE. — A charter-party stipulated: "The cargo to be loaded and discharged with all quick dispatch, as fast as the captain can receive and deliver." *Held,* that the charterers were liable for demurrage where the vessel was, from the crowded condition of the port, delayed in procuring a berth.

In Admiralty.   Libel for Demurrage.

*Brown & Smith,* for libellants.

*Cowan & Cross,* for respondents.

MORRIS, D. J.   The Russian bark Bacchus, of which libellant is master, was chartered to bring a cargo of steel rail ends from Antwerp to Baltimore.   She arrived in the port of Baltimore on the fourth of December, 1879, and was ready to discharge on the 5th.   The Baltimore & Ohio Railroad Company was to act on behalf of the consignees in receiving the cargo, and notice was given on the 5th to its foreign freight agent, who said that he already had information that the vessel had arrived, and had notified the holders of the bill of lading.   The railroad agent referred the master to the company's wharfinger, who said there would be some delay, but that he would do the best he could, and would send a tug for the bark as soon as the berth for her was ready.   The impor-

tation of iron had then recently very exceptionally increased in the port of Baltimore, and there was such an unusual number of vessels arriving to be discharged at the railroad wharves that berths could not at once be provided for them.

The railroad company promptly leased additional wharves and laid down tracks upon them, but could not give the Bacchus a berth until the ninth of December, and did not commence receiving the cargo until the afternoon of the 10th. The libellant frequently, from the first day of the detention, notified the consignees, protesting against the delay, and now claims in this libel demurrage for four days. The charter-party under which this cargo was shipped appears to have been prepared with unusual care. The parties would seem to have well understood the contingencies which might arise, and to have endeavored to provide against many of the disputes which do arise when such contracts are carelessly entered into. The stipulations with regard to discharging the cargo are as follows: "The cargo to be loaded and discharged with *all quick dispatch, as fast as the captain can receive and deliver.* If the berth at the railway pier at Baltimore is obtainable on vessel's arriving, the captain has no objection to discharge there—the freighter to have the option of keeping said ship 10 days on demurrage, over and above the said lay days, at £15 per day."

This makes a very different case from one in which the charter-party is silent as to the discharging of the vessel, or only provides for usual or customary dispatch. The charterers expressly agreed that the vessel should have quick dispatch in discharging, and that they would receive the cargo as fast as the master could deliver it. They took upon themselves the risk of being able without delay to provide a suitable berth, and they cannot excuse themselves by showing that they have used reasonable diligence and have discharged the vessel within a reasonable time, considering the crowded condition of the port. They made a definite and express contract, and they must show that they have complied with it.

The respondents have endeavored to show that even admitting the delay of four days in giving the vessel a berth, that

the improved and peculiar facilities of the railroad for discharging iron into bonded cars, by which the delay of weighing it in smaller quantities by custom-house officers is obviated, fully made up the four days, considering how long it would probably have taken to have discharged the cargo at an ordinary dock. As to the facts on which this defence is based, I am not entirely satisfied; and, even if I were, I doubt if it could be properly maintained without showing some consent by the master to wait, in order to obtain the advantage of the improved facilities. No such consent is claimed. On the contrary, it appears that the master from the first, and almost from day to day, protested against the delay and urged his right to be at once discharged. He was entitled to have the iron taken away as fast as he could deliver it, and the fact that the consignees did fully comply with the contract as soon as they gave him a berth, is no justification of the delay in procuring one.

I pronounce in favor of the libellants for four days' demurrage, at the rate of £15 sterling per day.